Brothers Craft Brewing, LLC against Brothers Franchising. Mr. Friedman. Thank you, Your Honor. May it please the court, the board's primary error in this opposition proceeding was determining that Brothers Franchising demonstrated the requisite something more necessary to establish a likelihood of confusion. There are three key points I'd like to address this morning. The first, in which the board correctly found was that the something more requirement from the Jacobs-Kors line of cases indeed does apply here, notwithstanding appellee's registration for bar services. The second point, and the most significant point, is being that the something more requirement does apply, it was not met here. The evidence in the record relied upon by the board really establishes that Brothers Franchising indeed does provide bar services, but we know that. That isn't the something more. That is the beginning of the something more analysis. There has to be something more beyond those bar services, and the facts relied upon, which I'll discuss further in the argument, simply go to the fact that these are indeed bar services. There's also a key point here, which I want to make sure is clear before this court, that there is something unique about bar services that are different than even the restaurant line of cases, and what's evident on the record here is that bar services, like appellee, like Brothers Franchising, they are selling third-party branded beer. It's not simply that they don't produce the beer themselves, that they don't brew it or sponsor it. It is that they specifically advertise and express on their menus, in their establishments, that these beers are Budweiser, Miller, Coors, what-have-you, that these are third-party branded. They're in fact distancing themselves as the source of the beer, and the third point here is that the lack of something more is dispositive in this case, even if one were to accept the board's other findings on the other DuPont factors, such as similarity, strength of the mark, even given those board findings, which we continue to maintain warrant error, is nevertheless dispositive that there was not something more here, and that in itself our grounds reversal. I'd like to begin, as I said, by laying out that something more indeed applies. As the board did correctly find, but is that issue an appeal based on appellee's arguments? The fact that appellee's registration includes bar services does not remove it from the Coors-Jacobs paradigm of requiring something more. The essentially, well, bar services is something more, but that can't be the case, because the premise of Coors, which involved a restaurant, is that restaurants serve beer. If restaurants didn't serve beer, there'd be no Coors case to begin with. So the Coors-Jacobs paradigm of something more begins at a place where something more, where a beer is sold at the establishment, but something more is required. So simply the fact that adding bar services to the underscores that there has to be something more, it doesn't resolve to something more. I would also point to the TAL licensing decision, which is a published precedent of the board, where the board looked at vodka as related to nightclub services, and we would submit that vodka is to nightclub services as beer is to bars, and that that TAL licensing case demonstrates that it's the board's understanding that something more is required, as it properly found here. And I would also address the Never Forget brands, which was cited by Apelli in their opposition, which came out after the board proceeding, and a few quick points about that case. First, you know, obviously it's non-precedential, and it's of no more value than the non-precedential decisions by the board, such as tin roof brewing, where the board did in fact require something more to be shown as between a bar, bar services, and beer, and didn't find it. The other point is an even more recent case from February of Brawling Bear Brewing. It's also non-precedential, and was decided just a few months ago, and did apply to something more again as to between beer and bar services, and found that it was not met. The point here is not to go back and forth between non-precedential TTAB decisions, understanding that those might have limited value at this stage. The point is simply to point out that Never Forget brands does not evidence any kind of sea change or change in approach by the board. Next, I would like to address the most significant point here, is that the record lacks evidence of the requisite something more. Based on its opinion, it's clear the board relied on three facts in the record, or I guess kind of family facts in the records, to support its finding that something more was established. The first is that with respect to Appellee Brothers franchising, the boards found that bar services comprised the most significant portion of opposers bar and restaurant services, both in ratio of bar to restaurant services, and that the bar is a focal point in the establishment. This goes to my initial point that those types of facts simply point out that they do in fact provide bar services. The amount of bar services to restaurant services does not make it any more likely that a consumer would confuse the between Brothers BCB's beer that they're micro-brewing and the third-party branded bar services being provided by Appellee. Certainly the physical size of the bar, which is something the board apparently relied upon, the physical size of the bar and the placement of the bar in Brothers franchising establishments, in no way leads to, furthers something more as to confusion with respect to who is brewing this beer, what is the source of the beer, what is the origin of the beer. That is the something more test, not whether generally speaking, you know, you can get beer at bars, surely you can, that is not a dispute, but whether or not what facts are there, what something more is there in the record, that there's going to be confusion for a consumer as to the origin and the size and placement of a bar does not make it any more likely that somebody's going to think that establishment is brewing beer. I also point out that with respect to the board's view on ratio bar to restaurant services, beer is still only 25% of their sales, that's less than food, that's less than liquor, which is 30%, so it's not even the most significant part of their bar services is sale of beer. The second factor relied upon by the court in finding something more, and it's a significant piece of the board's decision, is the menu, is the menu that brothers use, and for point of reference, I would direct the court's attention to appendix, to page 647 of the appendix, which is the menu. The board found that the fact that the menu itself is branded with the brothers franchising mark, and that it has a whole lot of beer on it, up to 45 beers on it, was evidence of something more. It's our position that actually the opposite is true, that if you take a close look at the menu, it actually shows why something more isn't here, and what I'd like to point the court to is next to each beer that they sell, so in the left-hand column is what the beer is, it's Miller Light, Coors Light, Bud Light, Budweiser, Yingling, etc. They have a second column that says origin, and that origin actually points to the city and state it's made, so the information on that menu is the third-party business, the third-party brewer that is producing the beer, and in fact, where specifically they're located. This menu makes it clear that the beer is not a product of the brothers franchising establishments. It is third-party sourced. They advertise it, they express it, and the fact that there are 45 of them, in fact, evidence is how much third-party beer they are selling, so Appellant Brothers Craft Brewing's third-party beer, it's not a confusion factor, it's the opposite. It is showing the distance between a microbrewery, somebody who produces the beer, and a bar service which sells third-party beer like Miller Light, Coors Light, Budweiser, and the final factors the court, or excuse me, I should say the board found, supported a finding of something more, is the old private label sale of beer and the recent partnership between Appellee Brothers Franchising and some breweries. We'd like to address, as we have in our brief, that this old private labeling beer, it's a red herring for several reasons. One is it ceased happening six years before Brothers Craft Brewing application. Not only did it stop six years prior to the application, out of the 25 years that Brothers Franchising had been in business, they'd only been doing that for three years. Three out of two locations, only for on-premises sale, and only two to four cases a week. To put that two to four cases a week into some context, according to Brothers Franchising, they've generated 288 million dollars of sales in the last ten years. Not only has that old label, that private label brewing, excuse me, sale of beer stopped six years prior to this application, when they were going on they were clearly de minimis based on the information provided by Brothers Franchising. With respect to the recent partnership, point out that that occurred three years after Brothers application. In fact, three years after Brothers Franchising filed its opposition. And finally, I'd like to distinguish several of the cases relied upon by Brothers Franchising. The Azteca restaurant case, the curry in a hurry cases, the golden griddle cases. What all those cases have in common, there are a few things. One, there are restaurants. And the way a Mexican restaurant specializes in Mexican food, the way curry in a hurry specializes in Indian curry, the way golden griddle specializes as a restaurant in pancakes, is in no way akin to saying how a bar specializes in beer. The former is a subset of the restaurant business and true specialty, true specialties. The latter is near ubiquitous. This idea that bar served beer, it's not a specialty, it is what is expected. And finally, as I mentioned at the beginning, this lack of something more is this positive here. We continue to maintain that the marks are not as similar as the board found, that they're registered marks are not as strong as the board found, but even if they were, something more is this positive here. Unless the court has any questions, I'll reserve my time. Any questions at the moment? All right, now you have your rebuttal time. Let's hear from the other side. Ms. Myers. Thank you, Your Honor. May it please the court. Given Appellant's arguments in its briefing and today, I will focus my time on the something more element from the In Re Coors case because it is the primary basis on which Appellant challenges the board's decision. I'd like to make it clear that the something more element that's discussed in In Re Coors originated and came from the Jacobs case, which is a Jacobs described this element was that, quote, a party must show something more than that similar or even identical marks are used for food products and for restaurant services. So that is what is required by something more. You cannot simply say, I have a trademark that I use on a package of spaghetti and here's a restaurant that uses the same trademark on its restaurant services and therefore there's confusion. You can't rely on that alone. You have to show something more. And this is a factual inquiry and it's one that each can be decided on its own facts. Now despite that, Appellant's appeal relies almost entirely on its rigid application of In Re Coors, which is exactly what it did in front of the board as well, rather than providing any sort of assessment of the distinct facts in this case that establish something more. And we contend therefore that Appellant's challenge to the board's decision fails for at least six reasons. The first one, as the board pointed out, is that the brothers registrations in this case are for bar services in addition to restaurant services. Now Appellant wants to ignore that fact and act like it doesn't matter, but it is something that directly distinguishes this case from the facts in In Re Coors, because the registration at issue in In Re Coors only involved restaurant services only. Well part of their problem as well is that this something more is not included in the trademark and the registration. That's correct, Your Honor. The analysis is based on the services versus the services identified in this registration. The registrations at issue here involve bar services. And the applied for goods are beer, several varieties of beer, but we've all been treating it just as beer collectively. And while restaurants are not necessarily associated with beer, a bar by definition is. And this is one of the reasons why in the Never Forget Brands board decision that Appellant mentioned that is in our papers, the board decided that beer and other alcoholic beverages are inherently related to bar services, because you can't have one without the other. Whereas in a restaurant example, you can have a restaurant without beer. You can have a restaurant without spaghetti, but you can't have a bar without beer. BCB tries to attack the Never Forget Brands decision for a variety of reasons, one of which is citing to the board's other recent decision in the Brawling Bear Brewing case. We believe that one is distinguished a little for a couple of reasons. The most obvious one being that that case involves a cancellation proceeding against an existing registration, and therefore the registration was provided with a presumption of validity. And the standard is just harder in that context in order to get a cancellation. And the other distinguishing feature is that in that case, the petitioner did not introduce any evidence to support his claim. It just didn't provide any evidence during the testimony period. So as a result, what was being asked for in that case was essentially to say, hey, we have this registration, or hey, sorry, we have this application, you have your registration, your registration should be canceled based solely on the fact that we're applying to have these similar services and beer. And the board was unwilling to do that given the context of how that case arose involving a registration. Now here, as the junior user applicant, appellant enjoys no presumption of validity. Instead, as the board pointed out, any doubts in this case regarding whether or not there's a likelihood of confusion are to be a result against appellant as the junior user. Now, the second reason that we contend that BCB's argument fails is that Brothers does not merely serve beer. Instead, beer is the focal point of its business. This is something that the board walked through. They cited substantial evidence to support their opinions on this. And that is, you know, in the board decision from Appendix 27 through 32. And this is another distinguishing point from the Inri Coors case, which was an ex parte appeal in which the restaurant registrant did not introduce any evidence showing that it even sold beer, let alone that it focused on beer. Here, we've got evidence showing that Brothers sells a large variety of beer, it's a focus on its website, a focus on its menus, and it's a large portion of its business. 25% of sales to beer is significant. The percentages accounted for for liquor include all different types of liquor, including wine and things of that nature. So that's a variety of things encompassed with that percentage. And the food as well, also encompasses a variety of different food items. Here, we're talking about just beer, and beer is 25%, which is a lot. So we contend that this case is more in line with the cases that have found something more because the restaurant at issue specialized in the food items identified in the application or registration. And these are the cases that were cited by the board in its decision on Appendix 26. That includes the Golden Griddle Pancake House case, the Azteca Restaurant case. And then we've cited some some recent cases that have followed suit. The Curry in a Hurry case, the INRI Country Oven case, which is a presidential case that appellant does not address at all. That's one that involved bakery services and bread buns. And another case that is also presidential that the appellant doesn't not address at all either, which is the INRI Accelerate case. And that one involved providing food and drink services. And on the other hand, the goods were coffee. But the market issue was Colombiano Coffee House. So it was clear that the providing good food and drink were providing coffee drinks and that the coffee goods that those were similar enough to establish that those goods were in fact related, which is what the something more is trying to, to get down to the bottom two. Do we have goods and services that are related? Um, the third reason we believe that the board's decision is correct, and that appellants appeal should fail is that Brothers has sold its own private, private labeled beer under its Brothers mark. This, this is not disputed. It's not disputed that Brothers has done this, that they've sold private labeled beer in bottles that they have partnered up with breweries and, you know, use their mark on the tap handles. This has happened. And therefore, even under appellants very narrow reading of INRI Coors, this falls into something that is specifically identified in that case as providing something more, which is a restaurant providing a private labeled beer. Now, the fourth reason we believe that the board decision is correct and appellant is incorrect on its appeal is INRI Coors does not require Brothers to brew its own beer in order to establish something more. And appellant finally conceded that fact in its reply brief on page eight, that Coors certainly does not require that a poser must be a brewpub to establish something more. Yet the bulk of appellant's briefing focuses on the fact that Brothers does not brew its own beer. Well, that fact has never been in dispute, but now it's not in dispute that that's not required to show something more. And so on that point, we would just say that appellant's arguments are irrelevant and certainly don't establish that the board's decision was an error. The fifth reason that appellant's argument fails is that in this case, there is record evidence that the same mark is used in connection with both bar services and beer. The first example is the one I just spoke of, which is the fact that Brothers has used its Brothers marks on a private label beer, which is using the same mark in connection with beer and bar services. Brothers does have a pending trademark application for its Brothers mark for use with beer. So this is certainly something that they intend to continue doing. This isn't, you know, some flash in the pan that has happened once and it's never going to happen again. It's been very clear from the evidence in the record that they've done it when it's made sense, when they found the opportunity, and that they continue to have this interest in doing that in the future, given that the company does focus so much on beer and bar services. And the second example is appellant itself, which is a fact that they largely ignore. Appellant uses the Brothers craft brewing mark with its beer that it brews, but it also uses it in connection with its tap room, which is a bar. We have submitted a photo of their tap room. It's on appendix 524. And that photo clearly shows what looks like a bar, like the definition of a bar that is that the board took notice of. And appellant's use of the same mark with both beer and bar services further supports the fact that we have something more in this case. And related to that point, some of the third party registrations that appellant put in the record, those are on appendix 17 in the board's decision, they set those forth. Three of those actually also cover both beer and tap room services. So we do have record evidence of the same mark being used for both. So finally, the last reason why appellant's argument fails is whether there is something more is a question of fact that this court reviews for substantial evidence. And we suggest that here for the reasons I've previously discussed, there is substantial evidence to support the board's decision. The board's analysis on something more was thorough, it devoted 10 pages of its 35 page decision to the question of something more. And because there is more than a scintilla of evidence supporting the board's decision, it must be upheld under those circumstances. And your honors, real briefly, I just want to touch on the similarity of the marks. Appellant did not address them in his remarks this morning, but we did hear some of that in the reply brief. And I just want to, again, stress the fact that the board's analysis of the similarity of the marks was correct. The question with respect to this factor is, you know, whether the words craft brewing and the brother's craft brewing mark distinguish it from appellee's brother's trademark. And the answer is no. It is well established that the first word is the most dominant and that descriptive words do not provide any source identifying function. The appellant has not identified anything to dispute these standards, and they were properly applied by the board. Brothers and brothers, also a descriptive word? Brothers in the context for the goods and services of bar and restaurant services is not suggestive, we would contend. We would say that it is more arbitrary in that connection, because while brothers suggest a familial connection, that isn't what is being, what is claimed in the registration itself as bar and restaurant services. So the use of brothers with bar and restaurant services is not descriptive of what those services are. Where the craft brewing and the brother's craft brewing mark is descriptive of a feature of applicant's beer, which is why when they applied for their mark, they were asked to disclaim and did disclaim that element. And there are other cases that talk about how brewing company and things like that are merely descriptive and do not provide a source identifying feature that would separate the two marks. I think the in-retain roof case that appellant cites a few times in their briefing is one which brewing company was disclaimed, and they said that that did not provide any source identifying function. Also, appellant focuses on the brothers aspect of its markets and its marketing. There's some of that in the appendix, I would say on page 517, 520, 522, 523, and 527. You can see that on brothers labeling, it will focus on the brothers mark. There is the signage that focuses on brothers as opposed to craft brewing. And this makes sense, because in the eye of the consumer, they're more likely to remember the brothers than the craft brewing. And one case that talked about that in detail was the Inri hookah lit case that we cited in our papers, and they talked about the penchant of consumers to shorten marks. And even though in that case, the hookah lounge services mark consisted of four separate words, they said that what the consumers were most likely to associate with the mark was the word lit or lit hookah as opposed to, you know, lounge or any of other words that go with a variety of marks. So we believe the board's decision on that is also correct. And in just one final remark, I'd like to point out that the similarity of the marks is another reason that distinguishes this case from Inri Coors. Inri Coors, while they found the marks similar, it seemed clear that the Federal Circuit was a little on the fence on that question, because that case involved two distinct design marks that each had their own illustration associated with that. Where here, we have two word marks without any claim to font or style or anything like that, so we are dealing strictly with word marks, which makes confusion more likely, given the fact that we have brothers as the lead dominant word in both marks. So your Honors, we would just ask that this court affirm the board's decision. Thank you very much. Okay, thank you, Ms. Myers. Mr. Friedman, your rebuttal time. Thank you, Your Honor. I'll be brief. I do want to focus on the Coors case, the brew pub aspect of it. To be sure, it's not a requirement that for there to be something more with a beer registration, you know, the registration has to be a brew pub, but it is very difficult to reconcile Appellee's position that merely having an active bar is that something more the Coors court contemplated. The idea that the Coors court would suggest, had it been a brew pub which brews its own beer and sells it at a restaurant, or just sells some Budweiser, as if those things are equivalent, I don't think those are reconcilable. That it has to be something more akin to a brew pub. Doesn't have to be a brew pub. And I would give an example, the Tao licensing case. I think the board correctly found something more in that case, and it wasn't because the nightclub distilled their own vodka. It had a litany of other facts that did demonstrate something more, like the vodka formative names they would use for some of their drinks. The fact that the applicant there had tried to sell the vodka brand to the nightclub, and upon failing to do so, registered it, then tried to sell the registration to them. Clearly, those types of facts can establish something more, and are consistent with Coors. But it's not reconcilable with Coors to suggest that it's a brew pub, or just a bar. A brew pub and a bar are not analogous. And in fact, we see that in the In Re Accelerate case, which Appellee cited, where it says, quote, by analogy, a coffee house is to the In Re Accelerate understands, and is using this idea that a coffee house is like a brew pub. Not like any old place you can get a cup of coffee. And finally, I'd like to address the issue of the tap room. We would argue that a tap room is a bar. I don't believe that's an accurate way to state it. The tap room at Brothers Craft Brewing is a place you can taste the beer they make on premises, and only that beer. That you can't get a Budweiser, you can't get a Miller Lite, you can't get a Coors. It is not a bar in the sense that Appellee's bar services on the menu only have third-party, only have Budweiser, only have Coors, only have Miller. The idea that somebody who is at Appellee's Brewery would be confused as to the source of the beer they're being served in that tap room, with a restaurant, a bar and grill, I think is untenable. So unless the court has any other questions, I appreciate the court's time this morning. Any more questions for counsel? Thank you both. The case is taken under submission, and that concludes this panel's argued cases. The honorable court is adjourned until tomorrow morning at 10 a.m.